1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| U.S. HOME CORPORATION, <br><br>               Plaintiff, <br><br> v. <br><br> DONALD and KIMBERLY PARKER-HANSEN, et al., <br><br>               Defendants. | 2:11-CV-1426 JCM (GWF) |

**ORDER**

Presently before the court is plaintiff/counter-defendant U.S. Home Corporation's ("U.S. Home") motion to dismiss defendant/counter-plaintiff Donald and Kimberly Parker-Hansen's ("Parker-Hansen") counterclaims. (Doc. # 27). The Parker-Hansens filed a response (doc. # 33), and U.S. Home filed a reply (doc. # 38).

Also before the court is U.S. Home's motion to strike the counterclaims. (Doc. # 29). The Parker-Hansens filed a response (doc. # 34), and U.S. Home filed a reply (doc. # 37).

**I.      Background**

To resolve the instant motions, it is necessary to address both the facts precipitating the filing of this action and the procedural history.

*A.      Facts*

On July 5, 2011, the Parker-Hansens asserted a construction defect claim against U.S. Home, pursuant to NRS 40, on their own behalf and on behalf of all similarly situated owners of residences

**James C. Mahan**
**U.S. District Judge**

in the "Iron Mountain" development and the "Las Vegas Valley." (Doc. # 27, 4:10-12).  The notice intended to inform U.S. Home of allegedly defective yellow brass plumbing systems that failed or corroded due to dezincification.  (Doc. # 27, at 4; doc. # 33, at 5).  The notice included an expert report written by Dr. Peter Elliot.  (Doc. # 27, at 4; doc. # 33, at 5).  In addition to U.S. Home, the Parker-Hansens sent the notice to KB Home Nevada Inc. ("KB Home") and William Lyon Homes, Inc. ("WL Homes").

After receiving the notice, U.S. Home requested access to the Parker-Hansen residence to conduct an inspection of the allegedly defective brass plumbing systems. (Doc. # 27, at 4; doc. # 33, at 5).  U.S. Home sent two separate letters to counsel for the Parker-Hansen requesting access to the Parker-Hansen home to conduct an inspection.  (Doc. # 27, 4).  The letters from U.S. Home to the Parker-Hansen's counsel were dated August 17, 2011, and September 2, 2011.  (Id.).

The Parker-Hansens never responded to the letters sent by U.S. Home or otherwise permitted U.S. Home an opportunity to conduct an inspection.  (Id.; Doc. # 1, Compl., ¶ 18 ("Defendants, through their counsel, have refused and neglected to provide Plaintiff with access to the homes.")).  U.S. Home filed the instant lawsuit on the same date it sent the second letter, which gave the Parker-Hansens approximately two weeks to allow an inspection of their home.

The notice covered the entire "Iron Mountain Development," which includes villages 1 through 12B at the Iron Mountain Ranch and Jones Horse at Iron Mountain Ranch.  (Doc. # 27, ex. 1A, Notice).  Jones Horse at Iron Mountain Ranch was developed, marketed, and sold by U.S. Home as "Wolf Creek."  (Doc. # 27, at 9).  U.S. Home did not build any homes in villages 1 through 12B of the Iron Mountain Ranch.  (See id.).  The Parker Hansens admit that the "Chapter 40 Notice was sent on behalf of all home [sic] in the Iron Mountain project, a large development that contains more than 1,800 homes built by more than one builder."  (Doc. # 33, at 5 n. 2).

After receiving the notice, U.S. Home disclosed its existence to an unspecified number of homeowners within the Wolf Creek development.  (Doc. # 37, at 5).  U.S. Home offered to inspect their homes for the alleged defect.  (Id.).  Approximately twenty-one homeowners responded and requested an inspection.  (Id.).  U.S. Home timely inspected the homes that requested an inspection

1   and sent a letter to the homeowners notifying them of the results of the inspection in compliance with

2   NRS 40.6452.

3       B.      Procedural History

4       U.S. Home filed a complaint in this court seeking the following declaratory relief: (1) parties'

5   rights and obligations under NRS Chapter 40; (2) enforcement of arbitration agreements; (3)

6   injunctive relief from this court requiring defendant to fully comply with NRS Chapter 40; and (4)

7   an order compelling arbitration.  (Doc. # 1, Compl.).[1]

8       The Parker-Hansens filed a motion to dismiss U.S. Home's complaint under Federal Rules

9   of Civil Procedure 12(b)(1) and (b)(6).  This court held that subject matter was proper under

10  diversity jurisdiction, 28 U.S.C. § 1332, because the parties are diverse and the amount in

11  controversy well-exceeded the $75,000 requirement.  (Doc. # 19).

12      The Parker-Hansens subsequently filed an answer.  (Doc. # 20).  The answer contained

13  several counterclaims and seeks to certify a class action on behalf of "all homes in the Iron Mountain

14  community constructed by [U.S.Home] which contain defective high zinc content brass plumbing

15  components." (Doc. # 20, ¶ 19).  The answer asserts all the following counterclaims: (1) "breach

16  of implied warranties of fitness for particular purpose, merchantability, habitability, quality, and

17  workmanship"; (2) "breach of express warranties"; (3) "negligence, including negligent

18  misrepresentation, failure to warn/instruct, negligent selection and negligent installation"; (4) "strict

19  product liability"; and (5) "declaratory and equitable relief."  (Id., at 13-23).

20      U.S. Home filed the instant motion to dismiss the counterclaims.[2]  A plaintiff in a related case

21  filed a motion to transfer and consolidate related actions.  (See doc. # 41).  This court awaited the

22  decision of the multi-district litigation panel.  The panel denied the motion to transfer and

23

24      [1] The complaint lists claims for relief one, two, four, and five.  The court believes there are

25  actually only four claims of relief because there is no third claim for relief.

26      [2] The motion to dismiss is technically a motion to dismiss and a motion to strike the

27  counterclaims in the answer.  (See doc. # 27).  The clerk's office separated the motion into a motion
    to dismiss (doc. # 27) and a motion to strike the counterclaims (doc. # 29).  These documents are
28  identical and the court need only address the motion to dismiss in its analysis.

James C. Mahan
U.S. District Judge
                                        - 3 -

1   consolidate the cases relating to Uponor F1960 brass fittings because the panel was "not persuaded

2   that centralization of these actions would serve the convenience of the parties and witnesses or

3   further the just and efficient conduct of this ligation." (Doc. # 43, MDL Order denying motion # 41).

4   U.S. Home's motion to dismiss is now appropriate for this court's review.

5   **II.   Legal Standards**

6         Fed. R. Civ. P. 12(b)(1) permits a court to dismiss a complaint, or counterclaims, for "lack

7   of subject matter jurisdiction."  A party's failure to exhaust administrative or other pre-filing

8   requirements deprives federal courts of subject matter jurisdiction "only in those cases in which [the

9   legislature] makes plain the jurisdictional character of the exhaustion requirement in question."

10  *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1040 (9th Cir. 2011).

11        An attack on subject matter jurisdiction can be either facial or factual.  *Wolfe v. Strankman*,

12  392 F.3d 358, 362 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations

13  contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contract, in

14  a factual attack, the challenger disputes the truth of the allegations that, by themselves would

15  otherwise invoke federal jurisdiction."  *Id.*  After a motion challenging federal jurisdiction under

16  Rule 12(b)(1), the party seeking to invoke federal jurisdiction "has the burden of proving the actual

17  existence of actual subject matter jurisdiction."  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.

18  1996).

19  **III.   Discussion**

20        This court has already established that it has subject matter jurisdiction over the entire action.

21  (*See* doc. # 19, Order).  The court must now determine whether it has subject matter jurisdiction over

22  the Parker-Hansens' counterclaims due to their alleged failure to comply with the pre-litigation

23  requirements of NRS Chapter 40.

24       *A.   NRS Chapter 40*

25        The Nevada Supreme Court has clearly held that a claimant must fully comply with NRS

26  Chapter 40 before initiating a constructional defect action.  *See D.R. Horton, Inc. v. Eighth Judicial*

27  *District ex rel. County of Clark*, 168 P.3d 731, 737 (Nev. 2007) ["*First Light I*"] ("A claimant's

28

**James C. Mahan**
**U.S. District Judge**

failure to comply with [NRS Chapter 40] requirements before filing a constructional defect action results in the dismissal or postponement of that action until claimant complies with those requirements."). "[T]he [Nevada] Legislature intended to provide contractors with an opportunity to repair constructional defects in order to avoid litigation." *Id.* The mandatory language chosen by the legislature in the statute confirms this interpretation. *See* NRS 40.647 ("If a claimant commences an action without" completing certain pre-litigation requirements the "the court shall dismiss the action.").

## I.      Sufficient Notice

The parties argue whether the notice provided by the Parker-Hansens complies with the requirements of NRS 40.645 as applied to U.S. Home.[3] Before a claimant may commence an action, the claimant must provide a notice that adequately comports with NRS 40.645.

U.S. Home argues the notice was inadequate under NRS 40.645 because it does not relate to a "single development," and because it is not based upon a sampling from any homes in the Wolf Creek community (the notice did not meet the reasonable threshold test). (Doc. # 27, at 8).  The Parker-Hansens argue that the whole of Iron Mountain Ranch, whether built by one or many builders, is a single development within the meaning of NRS.645(4), and the reasonable threshold test from *First Light I* does not apply because the defect is ubiquitous.

"[P]re-litigation notices are presumed valid under NRS 40.645.  A contractor who wishes to challenge the adequacy of a pre-litigation notice bears the burden of doing so with specificity." *First Light I*, 168 P.3d at 741.

NRS 40.645(1)(a) provides that before a claimant may commence an action for a constructional defect against a contractor, the claimant "must give written notice by certified mail, return receipt requested, to the contractor."  The Parker-Hansens mailed a certified notice to U.S Home of the alleged defect.

. . .

---

[3] This order says nothing of the adequacy of the notice as applied against KB Home or WL Homes.

NRS 40.6345(2) also requires the notice must "specify in reasonable detail," the nature of the defect and damages, the cause of the defects, and the location of each defect within each residence.  NRS 40.645(4) further provides that "one notice may be sent relating to all similarly situated owners of residences or appurtenances within a single development that allegedly have common constructional defects if:

> (a) An expert opinion is obtained concerning the cause of the common constructional defects and the nature and extent of the damages or injury resulting from the common constructional defects;

> (b) That expert opinion concludes that based on a valid and reliable representative sample of the components of the residences and appurtenances included in the notice, it is the opinion of the expert that those similarly situated residences and appurtenances may have such common constructional defects; and

> © A copy of the expert opinion is included with the notice."

### a.     Single Development

The notice must be sent on behalf of "all similarly situated owners or residences or appurtenances within a single development. . . ."  NRS 40.645(4).  The plain meaning of the statute confines an adequate notice to a single development with geographical boundaries.  *Leven v. Frey*, 168 P.3d 712, 716 (Nev. 2007) ("[S]tatutory interpretation should not render any part of a statute meaningless."); *see*, May 20, 2008 Order in *Quinterro et al v. Woodside Homes of Nevada, Inc., et al*, case no. 07A534939 (holding that a separate notice must be given for each separate development); Nov. 9, 2010, Order entered in *KB Home v. Winters, et al*; *but see In re Kitec Plumbing Fitting Litigation*, case no. 04A493302.

The Parker-Hansens' notice relates to the Iron Mountain Ranch master development (villages 1 through 12B at Iron Mountain Ranch), and the Wolf Creek development (Jones Horse at Iron Mountain).  The Parker-Hansens reside within Jones Horse at Iron Mountain Ranch, which was developed, marketed, and sold by U.S. Home as "Wolf Creek."

Villages 1 through 12B at Iron Mountain Ranch compose the Iron Mountain Ranch master development, which was built by other developers including KB Home and William Lyon Homes.  The Wolf Creek development differs from the Iron Mountain Ranch master development because

it has its own covenants, conditions and restrictions, and was built by a different developer with different subcontractors using different materials.  (Doc. # 27, at 9).  The Parker-Hansens vaguely suggest that all these factors are irrelevant because they are not explicitly referenced within the text of the statute.  The court disagrees and finds these factors are both relevant and dispositive.

U.S. Home did not develop any of the homes within the Iron Mountain Ranch development.  The notice purports to identify alleged defects in at least two separate developments - Iron Mountain Ranch and Wolf Creek.  The court finds that the notice does not relate to a single development.

b.      Reasonable Threshold

A claimant may use extrapolated evidence to conclude a single development is contaminated with construction defects.  Although such notices of common construction defects allow the use of extrapolated evidence, they must still be based upon a valid and reliable representative sample from the subject development.  *See First Light I*, 168 F.3d at 735 ("adequate extrapolated pre-litigation notice must have a reasonable statistical basis to describe the alleged defects and their locations in reasonable detail sufficient to afford contractors a meaningful opportunity to repair the alleged defects.").

The Nevada Supreme Court has adopted the "reasonable threshold test," to determine whether an extrapolated notice satisfies NRS 40.645.  *Id.*  Under the reasonable threshold test, "the scope of the extrapolated notice must be narrow.  Homes included within the scope of an extrapolated notice typically will be similarly situated only if they are part of a subset of homes within the development." *Id.* at 740.  "In all cases, an extrapolated notice is valid only if it identifies the subset or characteristics of the subset to which it applies." *Id.* at 740.

The Parker-Hansens' notice included the expert report of Mr. Peter Elliot.  Mr. Elliot's expert report is not based upon a single sample of plumbing components taken within the Wolf Creek development built by U.S. Home.  The report is based entirely upon his analysis and findings of six homes contained within the Iron Mountain Development, where U.S. home did not build any homes.

. . .

1    The Parker-Hansens do not contest that the notice of alleged defects is not based upon a

2    single home within Wolf Creek built by U.S. Home.  Instead, the Parker-Hansens argue that the

3    reasonable threshold test does not apply in this case because the defective yellow brass is ubiquitous.

4    The text of NRS 40.645(4) and the Nevada Supreme Court interpretation of that statute do not allow

5    for an "ubiquitous" exception, and this court will not create one.  The Parker-Hansens are not

6    exempted from compliance with the statute and providing sufficient notice with proper extrapolated

7    evidence.  This notice was inadequate because it does not meet the reasonable threshold test.

8    Finally, NRS 40.647(2) states that if a claimant commences an action without fully

9    complying with NRS 40.645 then "the court shall" dismiss the action.  The Parker-Hansens did not

10   limit their notice to a single development and did not meet the reasonable threshold test.  Therefore,

11   this court has no subject matter jurisdiction over the counterclaims.[4]

12                    ii.    Inspection

13   After providing adequate notice of an alleged defect, a claimant must (1) allow an inspection

14   of the alleged constructional defect and (2) provide a reasonable opportunity to repair the defect.  *See*

15   NRS 40.6462 & 40.647.  NRS 40.647 explicitly states that if a claimant commences an action

16   without allowing an inspection and reasonable opportunity to repair, "the court shall:

> (a) dismiss the action without prejudice and compel the claimant to comply with those provisions before filing another action; or
>
> (b) if dismissal of the action would prevent the claimant from filing another action because the action would be procedurally barred by the statute of limitations or repose, the court shall stay the proceeding pending compliance with those provisions by the claimant."

21   The court has no discretion.  *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,

22   523 U.S. 26, 35 (1998) (stating "the mandatory 'shall,' [ ] normally creates an obligation impervious

23   to judicial discretion."); *First Light I*, 768 P.3d at 739 ("It is clear from the legislative history that

24   the Legislature intended to preserve an opportunity for contractors to repair the homes they construct.

---

[4] The court must stop its analysis at this point.  The court dismisses the counterclaims without prejudice because it has no subject matter to hear the claims, and has not analyzed the merits of any of the counterclaims.

1   It is also clear that contractors are entitled to reasonable notice of alleged defects in their homes so

2   that they can verify and repair those defects in lieu of litigation.").  If the Parker-Hansens failed to

3   allow an inspection and a reasonable opportunity to repair then this court must dismiss the

4   counterclaims because the court has no subject matter jurisdiction to hear the counterclaims.

5       It is uncontested that the Parker-Hansens sent U.S. Home notice of an alleged defect.  It is

6   further uncontested that U.S. Home sent two letters to counsel for the Parker-Hansens requesting an

7   inspection.  The Parker-Hansens do not have to allow an inspection or a reasonable opportunity to

8   repair.  But, if they do not, then they cannot bring a lawsuit.  *See* NRS 40.647.

9       U.S. Home states that the Parker-Hansens have not made their home available for an

10  inspection.  The Parker-Hansens dispute this in their answer.  (Doc. # 20, Answer, ¶ 1).  However,

11  the Parker-Hansens do not renew the denial, or argue or address the issue in their response to the

12  motion to dismiss.  (*See* doc. # 33).  It is not disputed by either party that (1) U.S. Home sent a letter

13  requesting an inspection of the Parker-Hansen home and (2) no inspection has occurred.  The court

14  finds that the Parker-Hansens have yet to allow an inspection or a reasonable opportunity to cure the

15  defect, if any.[5]

16      The Parker-Hansens cursorily argue that this court should not dismiss the counterclaims, but

17  rather stay the proceedings pursuant to NRS 40.647(2)(b) because "the statute of limitations and

18  statute of repose may have already run."  (Doc. # 33, at 13).  The Parker-Hansens do not state which

19  of their claims may be barred due to statute of limitations or repose problems, or how close any

20  causes of action may be to becoming time barred.  The court cannot say, and the Parker-Hansens

21  have provided no evidence, that any of the causes of action in the counterclaims will be effected if

22  this court dismisses all the counterclaims because it lacks jurisdiction under NRS Chapter 40 to hear

23  them.[6]

24  _____

25      [5] U.S. Home has conducted an inspection of approximately twenty-one homes, suggesting
    that if the Parker-Hansens would have made their home available then U.S. Home would have
26  inspected it.

27      [6] The Parker-Hansens do not even provide the applicable statute of limitations for a single
    one of their causes of action.  Such an incomplete argument that the statute of limitations "may have
28

James C. Mahan
U.S. District Judge

1    In summary, the Parker-Hansens have not allowed an inspection or a reasonable opportunity

2  to cure any alleged defects.  The court finds no reason to stay the proceeding to permit compliance

3  with the statute.  The language of NRS 40.647 is clear and it strips this court of jurisdiction over all

4  the counterclaims.

5    B.    *Jurisdiction Over the Action Without Jurisdiction Over the Counterclaims*

6    The Parker-Hansens argue that judicial estoppel prevents U.S. Home from arguing this court

7  has no jurisdiction to hear the counterclaims.  The Parker-Hansens argue that this court cannot lack

8  subject matter jurisdiction to hear the counterclaims while simultaneously maintaining subject matter

9  jurisdiction over the entire action to enforce rights and obligations under NRS Chapter 40.  However,

10  the law cannot operate this way.

11    This court has subject matter jurisdiction over the action based upon diversity jurisdiction,

12  and may enforce rights and obligations under NRS Chapter 40.  To the extent this court is or may

13  be enforcing rights or obligations under NRS Chapter 40, it is only finding that the Parker-Hansens

14  have not met the mandatory pre-litigation requirements under NRS Chapter 40.  The court may grant

15  declaratory relief even if it means enforcing those rights and obligations under NRS Chapter 40,

16  while simultaneously lacking subject matter jurisdiction over the counterclaims because the Parker-

17  Hansens have not met pre-litigation requirements under the very same statutory provisions.  Subject

18  matter jurisdiction over the action and subject matter jurisdiction over the counterclaims are

19  dichotomous.

20    Next, the Parker-Hansens argue that NRS 40.645(6)(a) precludes U.S. Home from enforcing

21  any rights it may have under NRS Chapter 40.  NRS 40.645(6)(a) provides that no notice is required

22  under this section of the statute if "the contractor, subcontractor, supplier or design professional has

23  filed an action against the claimant."  The Parker-Hansens argue that since U.S. Home filed this

24

25  already run" cannot be the sole basis for staying the counterclaims.  U.S. Home, in its reply brief,

26  did the Parker-Hansens' work for them and listed the length of the statute of limitations for the
relevant causes of action.  The court does not believe that statute of limitations complications

27  warrant staying the counterclaims so that the Parker-Hansens may fully comply with NRS Chapter

28  40.

James C. Mahan
U.S. District Judge

1    declaratory relief action, then the Parker-Hansens have no further obligations to comply with any

2    pre-litigation requirements.  However, the law cannot operate this way either.

3         U.S. Home filed a declaratory relief action seeking to enforce certain statutory protections

4    and pre-litigation requirements.  By filing a declaratory relief action, U.S. Home cannot thereby

5    waive the very protections it seeks to enforce.  Statutory interpretation cannot lead to absurd results.

6    *See Arizona State Bd. For Charter Sch. v. U.S Dept. of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006)

7    ("statutory interpretations which would produce absurd results are to be avoided.").

8         *C.    Putative Class Action*

9         The Parker-Hansens seek to certify a class action on behalf of all owners of homes in the Iron

10   Mountain Ranch community built by U.S. Home.  However, at this time, the Parker-Hansens may

11   not bring any claims against U.S. Home because they have not fully complied with NRS Chapter 40.

12   Therefore, there can be no class action because the Parker-Hansens do not meet the adequate

13   representative requirements of Fed. R. Civ. P. 23(a)(4).  The court cannot certify a class action at this

14   point because there is no class representative. *.See Lierboe v. State Farm Ins. Co.*, 350 F.3d 1022-23

15   (9th Cir. 2003) ("[O]ur law makes clear that if none of the named plaintiffs purporting to represent

16   a class establishes the requisite of a case or controversy with the defendants, none may seek relief

17   on behalf of himself or any other member of the class.") (internal citations and quotations omitted).

18        The court's dismissal of the Parker-Hansens' counterclaims has no meaningful import to the

19   claims, if any, of the putative class.  No class yet exists.  The putative class members, at this stage,

20   are not a party to the lawsuit.

21   **V.    Conclusion**

22        This court dismisses the Parker-Hansens counterclaims without prejudice because the Parker-

23   Hansens did not comply with NRS Chapter 40 in all the following ways: (1) the Parker-Hansens did

24   not allow U.S. Home to make an inspection of the alleged defects; (2) the Parker-Hansens did not

25   allow U.S. Home a reasonable opportunity to repair any alleged defects; (3) the Parker-Hansens did

26   not give sufficient notice because their expert report was not limited to a single development; and

27   (4) the Parker-Hansens did not provide sufficient notice because the expert report did not meet the

28

**James C. Mahan**
**U.S. District Judge**

1    reasonable threshold test.

2           This court has subject matter jurisdiction over the action based on diversity jurisdiction and

3    may enforce certain pre-litigation requirements under NRS Chapter 40 in the form of declaratory

4    relief.  The court has subject matter jurisdiction over the action even though it does not have subject

5    matter jurisdiction over the counterclaims because the Parker-Hansens did not comply with those

6    very same pre-litigation requirements.

7           The Parker-Hansens do meet the Rule 23(a)(4) adequate representation requirement and

8    therefore the court cannot certify a class action at this time.

9           IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff U.S. Home's

10   motion to dismiss (doc. # 27) be, and the same hereby is, GRANTED consistent with the foregoing.

11          IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff U.S. Home's

12   motion to strike (doc. # 29) be, and the same hereby is, DENIED as moot.

13          DATED November 20, 2012.

14

15   _____
     **UNITED STATES DISTRICT JUDGE**

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**